**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

MARINA KEBLANSKY,                          No. CIV S-10-1041-CMK

        Plaintiff,

    vs.                                    <u>MEMORANDUM OPINION AND ORDER</u>

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

_____/

        Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. <u>See</u> 28 U.S.C. § 636(c). Pending before the court are plaintiff's motion for summary judgment (Doc. 19) and defendant's cross-motion for summary judgment (Doc. 22).

/ / /

/ / /

/ / /

1

# I.  PROCEDURAL HISTORY

Plaintiff applied for social security benefits on June 23, 2005.  In the application, plaintiff claims that disability began on December 1, 2003.  Plaintiff claims that disability is caused by a combination of carpal tunnel syndrome, neck pain, and headaches.  Plaintiff's claim was initially denied.  Following denial of reconsideration, plaintiff requested an administrative hearing, which was held on June 2, 2008, before Administrative Law Judge ("ALJ") Charles S. Evans.   In a July 10, 2008, decision, the ALJ concluded that plaintiff is not disabled based on the following relevant findings:

1.    The claimant has the following severe impairments: degenerative disc disease and carpal tunnel syndrome.

2.    The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations.

3.    The claimant has the residual functional capacity to perform light work except claimant is able to walk on a level surface for 2 blocks at a time, stand for 1 hour at a time, and sit for 1 to 1 1/2 hours at a time; claimant's fine manipulation is moderately impaired; claimant is able to push/pull 20 pounds for 5 minutes at a time; claimant is able to drive and climb 6 stairs; claimant's short-term memory is mildly impaired; claimant's medication moderates her body, hand, and headache pain to mild; claimant has disturbed sleep: she has 80% of the normal amount of energy for a person her age; claimant has 90% of the normal amount of alertness; claimant is able to lift 20 pounds occasionally and 10 pounds frequently.

4.    The claimant is unable to perform any past relevant work.

5.    Considering the claimant's age, education, work experience, and residual functional capacity, and based on application of the Medical-Vocational Guidelines, the claimant is not disabled.

After the Appeals Council declined review on February 18, 2010, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

## II.  SUMMARY OF THE EVIDENCE

The certified administrative record ("CAR") contains the following relevant evidence, summarized chronologically below:

August 16, 2005 – Records from Englewood Community Hospital reflect that plaintiff was seen in the emergency room for a laceration to her face sustained in a fall.  The cut was sutured and plaintiff was sent home.

August 23, 2005 – An agency consultative doctor submitted a physical residual functional capacity assessment.  The doctor opined that plaintiff could occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds.  Plaintiff could stand/walk/sit for about 6 hours in a normal workday.  Plaintiff's push/pull ability was unlimited.  The doctor found no postural, visual, communicative, or environmental limitations.  Plaintiff was limited in her ability to handle, finger, and feel, though no limitations were indicated with respect to reaching.  The doctor noted that plaintiff was independent in her activities of daily living and that the evidence of record showed only some mild decreased range of motion and sensation bilaterally in the wrists due to carpal tunnel syndrome.

September 2, 2005 – Craig T. Reihelf, M.D., reported on x-rays of plaintiff's wrists.  No specific abnormalities were noted.

September 6, 2005 – A. Del Pizzo, M.D., submitted what appears to be a medical source statement.  Dr. Del Pizzo outlines the following history:

> Patient has had no operative procedures.  In 1998 patient experienced bilateral hand pain, numbness, and weakness which continue to date making it difficult to open door knobs, button buttons, or even write her own name.  Patient also complains of poor sleep pattern due to hand numbness and pain.  In 1989 patient was diagnosed w/ osteoporosis and placed on Fosamax therapy which patient discontinued per se.  In 2000 patient after MVA had a fractured L clavicle which was treated conservatively.

On physical examination, Dr. Del Pizzo noted that her plaintiff's major problem is bilateral hand numbness, pain, and weakness. Tinal and Phelan tests were both positive bilaterally.  Muscle

1  testing of upper extremities revealed pain with minimal weakness.  Plaintiff's manipulative

2  ability on the left was observed to be minimally decreased.

3    March 8, 2006 – Agency consultative doctor James Andriole, M.D., submitted a

4  physical residual functional capacity assessment.  Dr. Andriole opined that plaintiff could

5  occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds.  Plaintiff could

6  sit/stand/walk for six hours in a normal workday.  Plaintiff's ability to push/pull was found to be

7  unlimited.  Dr. Andriole assessed plaintiff as being limited to only occasional postural activities

8  such as climbing and balancing.  No manipulative, visual, communicative, or environmental

9  limitations were noted.

10    May 12, 2008 – Plaintiff completed a mental residual functional capacity self-

11  assessment of her abilities on bad days.  Plaintiff indicated slight impairment in the following

12  areas: ability to remember locations and work-like procedures; ability to carry out very short and

13  simple instructions; ability to carry out detailed instructions; ability to sustain an ordinary routine

14  without special supervision; ability to ask simple questions or request assistance; ability to get

15  along with co-workers and peers; and ability to travel in unfamiliar places and use public transit.

16  Plaintiff indicated moderate limitations in her ability to maintain socially appropriate behavior.

17  Plaintiff indicated marked limitations in the following areas: ability to understand and remember

18  very short instructions; ability to understand and remember detailed instructions; ability to

19  maintain attention and concentration for extended periods of time; ability to perform activities

20  within a schedule, maintain regular attendance, and be punctual; ability to work in coordination

21  with or proximity to others without being distracted; ability to make simple work-related

22  decisions; ability to complete a normal work day and work week without interruptions from

23  psychological symptoms; ability to interact appropriately with the general public; ability to

24  accept instructions and respond appropriately to criticism from supervisors; ability to respond

25  appropriately to changes in the work setting; and ability to be aware of normal hazards and take

26  appropriate precautions.  Plaintiff stated that her ability to set realistic goals or make plans

independently of others is extremely limited.  In a separate self-assessment for good days

completed the same day, plaintiff indicated that her symptoms and limitations are the same as on

bad days.

Plaintiff also submitted a physical residual functional capacity self-assessment,

both as to good days and bad days.  As with her mental limitations, plaintiff stated that good days

and bad days are the same.  She indicated her physical abilities as follows: lift-carry less than 10

pounds; stand/walk for less than 2 hours in a 8-hour day; must periodically alternate between

sitting and standing; inability to push/pull due to numbness in hands; occasional postural tasks;

limited manipulative abilities; and no visual, communicative, or environmental limitations.


### III.  STANDARD OF REVIEW

The court reviews the Commissioner's final decision to determine whether it is:

(1) based on proper legal standards; and (2) supported by substantial evidence in the record as a

whole.  See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is

more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521

(9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to

support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

including both the evidence that supports and detracts from the Commissioner's conclusion, must

be considered and weighed.  See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones

v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the Commissioner's

decision simply by isolating a specific quantum of supporting evidence.  See Hammock v.

Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative

findings, or if there is conflicting evidence supporting a particular finding, the finding of the

Commissioner is conclusive.  See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

Therefore, where the evidence is susceptible to more than one rational interpretation, one of

which supports the Commissioner's decision, the decision must be affirmed, see Thomas v.

1  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal

2  standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th

3  Cir. 1988).

4

5                                    **IV.  DISCUSSION**

6              In her motion for summary judgment, plaintiff argues:

7                      At step five of the sequential evaluation, where the ALJ applied
               Rule 202.21 [of the Medical-Vocational Guidelines] to decide this case on
8              the basis of Ms. Keblansky's supposedly simple "light" capacity, . . . . the
               burden of proof rested with the Administration (citations omitted).
9              Therefore, unless substantial evidence supports the conclusion that Ms.
               Keblansky's *non*exertional limitations do *not* impair her exertional
10             capabilities, that grid rule could not apply.  (citation omitted).
                       To the contrary, not only did the decision fail to carry that burden
11             by way of any explanation whatever of the supposed irrelevance of its
               RFC's nonexertional limitations, but the VE testimony was substantial
12             evidence that these limitations "*would* preclude employment."  (citation
               omitted).

13

14  She also argues that ". . . the record was inadequate, ambiguous, and the ALJ's duty to develop

15  the record was developed."

16         **A.    Duty to Develop the Record**

17             The ALJ has an independent duty to fully and fairly develop the record and assure

18  that the claimant's interests are considered.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th

19  Cir. 2001).  When the claimant is not represented by counsel, this duty requires the ALJ to be

20  especially diligent in seeking all relevant facts.  See id.  This requires the ALJ to "scrupulously

21  and conscientiously probe into, inquire of, and explore for all the relevant facts."  Cox v.

22  Califano, 587 F.2d 988, 991 (9th Cir. 1978).   Ambiguous evidence or the ALJ's own finding that

23  the record is inadequate triggers this duty.  See Tonapetyan, 242 F.3d at 1150.  The ALJ may

24  discharge the duty to develop the record by subpoenaing the claimant's physicians, submitting

25  questions to the claimant's physicians, continuing the hearing, or keeping the record open after

26  the hearing to allow for supplementation of the record.  See id. (citing Tidwell v. Apfel, 161 F.3d

1   599, 602 (9th Cir. 1998)).

2           In its entirety, petitioner's argument is as follows:

3               . . . The decision mentions the hearing's medical expert noting the
        record was sparse; in fact, the decision stated its RFC was "supported
4       by . . . sparse record."  (footnote and citation to the record omitted).  As
        mentioned above; 1) pre-DLI [date last insured] charts from the Florida
5       health department are missing, 2) no documents reflect the first, pre-DLI,
        head-injury, from a car accident, 3) the dexascan shows osteopenia,
6       whether part of or preceding the Florida health department records, is not
        present, 4) the Florida state agency *examining* doctor expressed no
7       opinions about disability, and therefore did not speak to the issue of
        functional capacity prior to the DLI 5) the medical expert at the hearing
8       expressed no opinions about disability, before or after the DLI.
                That the decision found a functional capacity resulting in disability
9       has been shown and argued.  By its terms, that RFC is ambiguous about
        whether it is for the relevant DLI period.  (citation to record omitted).  No
10      time period for it is stated.
                In addition, the decision contains the statement: "there is nothing in
11      the record which reflected a need for assistance in obtaining record."
        (citation to record omitted).  *Brown, Tonaperyan*, and the remainder of the
12      law on the duty to develop the record do not put the pivotal point on a
        claimant's capacity to obtain records.
13              For the foregoing reasons, the record was inadequate, ambiguous,
        and the ALJ's duty to develop the record was developed.  (citations
14      omitted).

15          The court does not agree that the record was either inadequate to make a finding

16  or too ambiguous to make a finding.  In this regard, the court notes that "sparse" does not mean

17  the same as "ambiguous" or "inadequate."  Though the record may indeed have been sparse or

18  thin, it was nonetheless adequate and unambiguous.   In August 2005 an agency consultative

19  doctor concluded that the record showed that plaintiff has the residual functional capacity for

20  light work.  In September 2005, Dr. Reihelf reported no abnormalities were seen on review of x-

21  rays.  Also in September 2005, Dr. Del Pizzo noted only minimal weakness or limitation.  In

22  March 2006, another agency consultative doctor concluded that the record revealed that plaintiff

23  has the residual functional capacity for light work.  In each instance, the agency doctors were

24  able to reach a conclusion based on the record available.  No doctor opined that the record was

25  insufficient to reach a conclusion one way or the other.  To the extent the record was sparse or

26  thin, it was plaintiff's duty to present all material evidence to the ALJ.

**B.** **Application of the Medical-Vocational Guidelines**

The Medical-Vocational Guidelines ("Grids") provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity.  The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning capacity.  See Heckler v. Campbell, 461 U.S. 458, 460-62 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations.  See Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see also Heckler v. Campbell, 461 U.S. 458, 462 n.5 (1983).  Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only.[1]  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(b).  "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids."  Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404,

---

[1]      Exertional capabilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, or pulling and are generally defined in terms of ability to perform sedentary, light, medium, heavy, or very heavy work.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(a).  "Sedentary work" involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  See 20 C.F.R. §§ 404.1567(a) and 416.967(a).  "Light work" involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  See 20 C.F.R. §§ 404.1567(b) and 416.967(b).  "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  See 20 C.F.R. §§ 404.1567(c) and 416.967(c).  "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.  See 20 C.F.R. §§ 404.1567(d) and 416.967(d).  "Very heavy work" involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more.  See 20 C.F.R. §§ 404.1567(e) and 416.967(e).
          Non-exertional activities include mental, sensory, postural, manipulative, and environmental matters which do not directly affect the primary strength activities.  See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e).

1  Subpart P, Appendix 2, § 200.00(d), (e)).  The Commissioner may, however, rely on the Grids

2  even when a claimant has combined exertional and non-exertional limitations, if non-exertional

3  limitations do not impact the claimant's exertional capabilities.  See Bates v. Sullivan, 894 F.2d

4  1059, 1063 (9th Cir. 1990); Polny v. Bowen, 864 F.2d 661, 663-64 (9th Cir. 1988).

5           In cases where the Grids are not fully applicable, the ALJ may meet his burden

6  under step five of the sequential analysis by propounding to a vocational expert hypothetical

7  questions based on medical assumptions, supported by substantial evidence, that reflect all the

8  plaintiff's limitations.  See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995).  Specifically,

9  where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the

10  ALJ is required to obtain vocational expert testimony.  See Burkhart v. Bowen, 587 F.2d 1335,

11  1341 (9th Cir. 1988).

12           Regarding application of the Grids in this case, the ALJ stated:

13  In determining whether a successful adjustment to other work can be
    made, the undersigned must consider the claimant's residual functional
14  capacity, age, education, and work experience in conjunction with the
    Medical-Vocational Guidelines. . . .  If the claimant can perform all or
15  substantially all of the exertional demands at a given level of exertion, the
    medical-vocational rules direct a conclusion of either "disabled" or "not
16  disabled" depending upon the claimant's specific vocational profile
    (citation omitted).  When the claimant cannot perform substantially all of
17  the exertional demands of work at a given level of exertion and/or has
    nonexertional limitations, the medical-vocational rules are used as a
18  framework for decisionmaking unless there is a rule that directs a
    conclusion of "disabled" without considering the additional exertional
19  and/or nonexertional limitations (citations omitted).   If the claimant has
    solely nonexertional limitations, section 204.00 in the Medical-Vocational
20  Guidelines provides a framework for decisionmaking (citation omitted).

21  If the claimant had the residual functional capacity to perform the full
    range of light work, considering the claimant's age, education, and work
22  experience, a finding of "not disabled" would be directed by Medical-
    Vocational Rule 202.21.  However, the additional limitations have little or
23  no effect on the occupational base of unskilled light work.  A finding of
    "not disabled" is therefore appropriate under the framework of this rule.
24  In examining the record and testimony, and reviewing the case on a global
    basis, the Administrative Law Judge found that the claimant has the
25  capacity to perform entry-level work at the light exertional level with the
    aforementioned limitations.

26

1  The ALJ did not obtain testimony from a vocational expert and relied entirely on the Grids.

2        In it's entirety, plaintiff's argument is as follows:

3            At step five of the sequential evaluation, where the ALJ applied Rule 202.21 to decide this case on the basis of Ms. Keblansy's supposedly
4  simply "light" capacity, (citation to record omitted), the burden of proof rested with the Administration.  (citations omitted).  Therefore, unless
5  substantial evidence supports the conclusion that Ms. Keblansky's *nonexertional* limitations do *not* impair her exertional capabilities, that
6  grid rule could not apply.  (citation omitted).
7            To the contrary, not only did the decision fail to carry that burden by way of any explanation whatever of the supposed irrelevance of its RFC's nonexertional limitations, but the VE testimony was substantial
8  evidence that these limitations "*would* preclude employment."  (citation to record omitted).

9

10  The court finds no error in the ALJ's application of the Grids in this case because, simply, there

11  is no evidence of non-exertional limitations which would have an impact on plaintiff's capability

12  to perform light work.  At best, the evidence reveals only slight limitations with respect to

13  plaintiff's bilateral hand/wrist complaints, and no doctor has opined that such limitations

14  preclude light work.

15                       **V.  CONCLUSION**

16        Based on the foregoing, the court concludes that the Commissioner's final

17  decision is based on substantial evidence and proper legal analysis.  Accordingly, IT IS HEREBY

18  ORDERED that:

19          1.    Plaintiff's motion for summary judgment (Doc. 19) is denied;

20          2.    Defendant's cross-motion for summary judgment (Doc. 22) is granted; and

21          3.    The Clerk of the Court is directed to enter judgment and close this file.

22

23  DATED:  January 18, 2012

24                                **CRAIG M. KELLISON**
25                                UNITED STATES MAGISTRATE JUDGE

26